IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Jennifer Gillis and Tory Gillis, Individually and on behalf of the Estate of J.G., a minor, | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | SA-22-CV-0080-XR |
| Community Products, LLC d/b/a Rifton Equipment, Church Communities NY Inc., North East Independent School District, and Medical Wholesale, LLC, | § § § § § | |
| *Defendants.* | § § | |

## Plaintiffs' Response to Defendant Community Products, LLC Motion to Compel

The Court should deny Defendant Community Products, LLC ("Defendant")'s Motion to Compel because:

1. Plaintiffs' initial discovery responses were sufficient. Still, out of an abundance of caution, Plaintiffs have supplemented their responses in attempt to cure the purported deficiencies raised by Defendant.

2. Plaintiffs long ago provided the supposedly missing authorizations that Defendants complain about. Indeed, Defendants ordered records with these authorizations and have produced those records to Plaintiff. Plaintiff presumes Defendant's complaint about this issue was based on an honest mistake. Assuming this correct, the issue appears this issue is moot.

## I.

### Background

J.G. was a happy, loving four-year-old boy with special needs. He suffered from PURA syndrome – a disease that causes low muscle tone and makes basic physical tasks extremely

challenging. As a result, a therapist of J.G.'s had a Rifton "Activity Chair" delivered to Plaintiffs' house. An exemplar of the chair is pictured below:



The problem is the "butterfly harness" on the chair (i.e. the straps that go over the shoulders) has long been known to present a strangulation hazard to children with poor muscle control who can slide down in the chair. There have been multiple incidents reported in similar circumstances. And that is what happened to J.G.

While his mother momentarily stepped away to nurse J.G.'s youngest sibling, J.G. slipped down in the chair and was strangled on the butterfly harness. J.G.'s other sibling noticed J.G. was not awake. So, J.G's father – a military veteran who was back from Afghanistan – rushed into the room and administered CPR until the paramedics arrived. J.G. was then transported to the hospital. Tragically, he died a few days later. His parents filed the instant lawsuit as a result. Defendant sent discovery requests in response to the lawsuit.

In response to the discovery requests, Plaintiffs have produced all relevant documents they could gather and answered all interrogatories in compliance with the rules and spirit that

governs discovery.  Obviously, in a products liability case like this one, the parents will not have many documents related to liability.  Afterall, they did not design the chair, perform testing on it, perform risk assessments on it, market it, or sell it.  They did not even buy the chair.  But they have produced authorizations that enable Defendant to obtain items such as medical records and school records.  They have also produced J.G.'s birth certificate and death certificate, probate documents, Child Protective Services documents related to the mandatory investigation into J.G.'s death,[1] autopsy records, funeral records, the paperwork the school provided for the activity chair, and photographs of J.G. and his family.  And, while Plaintiffs do not possess copies of J.G.'s medical and therapy records, Defendant was able to obtain these records (dating back to his birth and covering his entire life) through the authorizations Plaintiff provided to Defendant.  Plaintiffs have also supplemented their responses (i.e., not just document production) to provide even more fulsome answers to interrogatories and note that they do not possess documents responsive to the requests for production at issue.  Consequently, the Court should deny Defendant's motion.

## II.

## The Court Should Deny Defendant's Motion

Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).

---

[1] The investigation ruled out that J.G. had been abused or neglected.

A.      **Interrogatories to Plaintiff Jennifer Gillis**

Interrogatory 14 seeks information related to any treatment "resulting from the incident in question" that Jennifer (J.G.'s mother) has received. Plaintiffs supplemented their response to state that "Jennifer Gillis has not received medical treatment related to the underlying incident." Ex. A. So, this issue should be moot.

Interrogatory 15, however, is different. That interrogatory seeks the identity of "each and every health care provider . . . that has treated you in the last 10 years" regardless of why the treatment was necessary. Respectfully, this is a case involving the death of a young child. It is difficult to understand how the child's mother's healthcare information – dating back years before the child was even born – is relevant and "proportional to the needs of the case." *See* FED. R. CIV. P. 26(b)(1).

There is no need for Defendant to discover the identity of all doctors that treated Jennifer for the flu, provided well woman exams, treated her for any physical injuries she has had, etc. Unlike Interrogatory 14, this interrogatory is not tied to the issues in the case. As a result, Plaintiffs responded as follows to this discovery request:

> **INTERROGATORY NO. 15:** Please identify each and every health care provider (including, but not limited to, doctors, hospitals, clinics, chiropractors and mental health professionals) that has treated you in the last ten (10) years.
>
> **ANSWER:** Plaintiff objects to this discovery request on the grounds that it is overly broad and unduly burdensome and not reasonably limited in time and scope and seeks information which is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections, please see the response to Interrogatory No. 14.

*Id.*

Plaintiffs' objection that the interrogatory is "overly broad . . . and not reasonably limited in time and scope and seeks information which is neither relevant to the subject matter

4

of this case nor reasonably calculated to lead to the discovery of admissible evidence" is proper. Still, Plaintiffs referred Defendant to Jennifer's response to Interrogatory 14 which confirms that no such information exists that is related to the incident. *See id.* The Court should deny Defendant's motion.

**B.   Authorizations for Disclosure of J.G.'s Medical and School Records**[2]

Defendant claims that Plaintiffs have not provided authorizations for medical and school records. This is inaccurate. Plaintiffs assume this was an honest mistake by Defendant, but these authorizations were provided on August 16, 2022. *See* Ex. B. Indeed, *Defendants recently produced medical and school records to Plaintiff that Defendant obtained as a result of the authorizations*. So this issue appears to be moot.

**C.   J.G.'s Medical Records**[3]

Plaintiffs do not possess J.G.'s medical records. Instead, like Defendant, they need to order them via a record service. Defendant has ordered and obtained these records (and produced them to Plaintiff). *See* FED. R. CIV. P. 26(e)(1)(A) (a party generally has no duty to supplement a discovery response "if the additional or corrective information has . . . been made known to the other parties during the discovery process or in writing."). Plaintiffs have ordered these records as well, but the records have not yet been delivered.[4] Once they are delivered, Plaintiffs will reproduce the records to Defendant. Once again, this appears to be a moot issue.

---

[2] RFP # 20, 37, 38, and 60.
[3] RFP # 8, 10, 18, and 19.
[4] Plaintiffs do not have records "relating to any . . . over-the-counter medication taken by J.G." for the last 2 years of his life.

D.     **Medical and Mental Health Records for Jennifer and Tory Gillis (J.G.'s parents)**[5]

While the loss of their child is unimaginable, J.G.'s parents have not sought medical treatment or mental health treatment as a result of J.G.'s death. In other words, they have grieved, but not sought formal treatment. Plaintiffs have made this clear in their most recent discovery responses. *See* Ex. C. Again, this issue appears to moot.

E.     **Liens Related to Plaintiffs' Medical/Mental Health Treatment Arising From the Incident**[6]

Plaintiffs have not received any notice of a lien from any medical provider or Medicaid related to the medical treatment J.G. received from the time of the incident until his untimely death a few days later. Plaintiffs have made this clear in their most recent discovery responses. *See* Ex. C. This issue appears to be moot as well.

F.     **Content on Social Networking Sites**[7]

Plaintiffs have produced approximately two dozen photographs of J.G. and his family. Plaintiffs' counsel believes there are a handful of additional photographs posted on social media as well as a posting that notifies friends and family about the date and time of J.G.'s memorial service. Plaintiffs' counsel is attempting to obtain these social media postings and will supplement the Plaintiffs' production in short order.

G.     **Statements and Records Related to Underlying Incident**[8]

Plaintiffs have no formal "statements" in their possession but have produced records they obtained from J.G.'s autopsy, from the funeral home, and from Child Protective Services

---

[5] RFP #29, 30, 31, and 32.
[6] RFP #64.
[7] RFP # 26, 27, and 28.
[8] RFP # 7, 12, 13, 16, 49, and 61.

that fit within these requests. Defendants have also obtained records from the Bexar County Sherriff's Department related to these requests.

The only other documents that Plaintiffs possess that would be called for under these requests are photographs of the activity chair that Plaintiffs' consulting expert took during a recent joint inspection with Defendant's experts present. *See* RFP #16. Defendant's experts examined the chair for multiple hours and took photographs as well. Regardless, the photographs taken by Plaintiff's consultant are privileged. *See* FED. R. CIV. P. 26(b)(4)(D); *See also* FED. R. CIV. P. 26(b)(3)(A). That is presumably why Defendant has not produced the photographs that its expert took as well. Assuming Defendant is not attempting to compel these photographs, this seems to be another moot issue.

**H.     Child Protective Services**[9]

Plaintiffs have produced a document from Child Protective Services that closes the mandatory investigation into this incident and concludes that J.G.'s parents did not abuse or neglect J.G. That is the only document they possess from Child Protective Services. Therefore, this should be a moot issue as well.

**I.      Rifton Activity Chair at Issue**[10]

This request seeks documents that "relate to all persons known to you to have performed installation, maintenance, service, or repair" on the chair. J.G.'s therapist had the chair delivered to J.G.'s house on September 1, 2020. He died approximately 2 months later. Plaintiffs' most recent responses make clear that no such services were performed on the chair during this short time period. And Plaintiffs have no information (or documents) related to

---

[9] RFP #53.
[10] RFP #51.

any such services before the chair was delivered to them. Instead, this information (to the extent it exists) would either be in Defendant's possession or the possession of the school district that provided the chair to J.G. Consequently, the appears to be moot.

### J.     Photos or Videos of J.G.[11]

This request seeks photographs or videos of J.G. shown at his funeral. While Plaintiffs believe this request is of questionable relevance (and is likely duplicative of Defendant's requests for photographs), they have no objection to producing such materials if they are still in Plaintiffs' possession.

## III.

## Conclusion

The Court should deny Defendant Community Products, LLC's motion to compel.

> Respectfully submitted,
>
> **ARNOLD & ITKIN LLP**
>
> */s/ Cory D. Itkin*
> Jason A. Itkin
> Texas Bar No. 24032461
> Cory D. Itkin
> State Bar No. 24050808
> 6009 Memorial Drive
> Houston, Texas 77007
> Telephone: (713) 222-3800
> Facsimile: (713) 222-3850
> e-service@arnolditkin.com
> jaiteam@arnolditkin.com
> jitkin@arnolditkin.com
> citkin@arnolditkin.com
>
> **ATTORNEYS FOR PLAINTIFFS**

---

[11] RFP #3.

## **CERTIFICATE OF SERVICE**

   This is to certify that on November 18, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all parties by operations of the Court's Electronic filing system.  Parties may access this filing through the Court's system.

               */s/ Cory D. Itkin*
               Cory D. Itkin